WO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wanda Kay Clark, | No. CV-13-01939-PHX-BSB () |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Wanda Kay Clark (Plaintiff) seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability and disability insurance benefits under the Social Security Act (the Act). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure 16.1. For the following reasons, the Court affirms the Commissioner's disability determination.

## I.    Procedural Background

On November 23, 2009, Plaintiff applied for disability and disability insurance benefits under Title II of the Act alleging disability beginning May 14, 2009. 42 U.S.C. § 401-34. (Tr. 128-34, 144.)[1] After the Social Security Administration (SSA) denied Plaintiff's initial application and her request for reconsideration, she requested a hearing before an administrative law judge (ALJ). (Tr. 59-62, 65-69.) After conducting a

---

[1] Citations to "Tr." are to the transcript of the administrative record. (Doc. 13.)

hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act.  (Tr. 14-21.)  This decision became the final decision of the Commissioner when the Social Security Administration Appeals Council denied Plaintiff's request for review.  (Tr. 2-7; *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council.)  Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II.    Medical Record

The record before the Court establishes the following history of diagnosis and treatment related to Plaintiff's health.  The record also includes opinions from State Agency Physicians, who examined Plaintiff or reviewed the records related to her health, but who did not provide treatment, and opinions from lay witnesses.

### A.    Treatment Record

In May 2009, Plaintiff went to an urgent care clinic reporting that she had injured her back three weeks earlier while lifting boxes at work.  (Tr. 220.)  Plaintiff complained of pain in her back and right leg.  (*Id.*)  The physician assistant who treated Plaintiff observed that she was in no apparent distress and that she had muscle spasms in her back, but no skeletal tenderness or deformity.  (Tr. 221.)  He assessed sciatica, prescribed medication, advised Plaintiff to avoid heavy lifting, and instructed her to return for a follow-up appointment in one week.  (Tr. 220-22, 226, 230.)

In June 2009, Plaintiff visited the same urgent care clinic. (Tr. 211.)  At that time, she had completed a full week of work and complained that her symptoms were worse. (*Id.*)  On June 8, 2009, an MRI of Plaintiff's back showed "[p]ostoperative changes with laminectomy defects at L4-5 and L5-S1, . . . some scar formation along the left lateral surface of the thecal sac at L4-L5, [m]inimal bulging of the L1-L2 through L4-L5 discs without focal herniation, . . . some foraminal narrowing at L4-L5, [and] severe degeneration of the disc space at L5-S1."  (Tr. 208-09.)

On June 16, 2009, Plaintiff sought treatment from Ronney Ferguson, M.D. (Tr. 223.)  He reviewed the June 2009 MRI and found that it showed "some slight amount of disc bulging," but no nerve root effacement or compression.  (Tr. 234.)

Dr. Ferguson diagnosed "lumbar strain with lumbar spondylosis and without myelopathy." (*Id.*) He released Plaintiff from work for eight weeks and prescribed physical therapy. (Tr. 233-34, 237-39, 240-45, 300, 430-36.)

Between October and November 2009, Plaintiff received treatment from Belinda Uhall, M.D. (Tr. 260-67.) After her initial visit with Plaintiff, Dr. Uhall noted that Plaintiff was in "no distress." (Tr. 264.) She assessed Plaintiff with chronic low back pain, insomnia, anxiety disorder, and cigarette abuse. (Tr. 267.) She advised Plaintiff to stop smoking. During a November 23, 2009 appointment, Dr. Uhall noted that medication had "significantly helped" Plaintiff to sleep and manage her pain during the day. (Tr. 261.) During a November 30, 2009 appointment, Dr. Uhall noted that Plaintiff had a cough, sinus pain, and a headache. (Tr. 260.) She assessed "acute bronchitis" and advised Plaintiff to stop smoking. (*Id.*)

On Dr. Uhall's referral, in October 2009, Plaintiff saw Steven Helland, M.D., at the Spine Care Institute for her chronic low back pain. (Tr. 248.) She reported that medication provided mild, temporary relief from her pain, and that physical therapy aggravated her symptoms. (Tr. 248-49.) On examination, Plaintiff had a limited range of motion in her back and positive straight leg raising test. (Tr. 251.) She exhibited full (5/5) muscle strength and did not have any obvious sensory deficits. (*Id.*) Dr. Helland assessed lumbar/sacral degenerative disc disorder, lumbar radiculopathy and neuritis, and lumbar/sacral spondylosis. (*Id.*) Dr. Helland administered a series of injections to Plaintiff's lumbar spine. (Tr. 248-52, 255-58, 304-10.) In late November 2009, Plaintiff reported that she was "somewhat pleased" with the results of the injections. (Tr. 261.) In December 2009, Dr. Helland noted "relatively modest therapeutic improvement." (Tr. 305.)

During 2009 and 2010, Plaintiff also received treatment at the Summit Healthcare Community Clinic (Summit). (Tr. 324-25, 342, 344-48, 362-63, 365-76.) During a July 2010 appointment, Plaintiff complained of pain in her hands, knees, and shins. (Tr. 326-27.) Plaintiff denied swelling or inflammation and examination showed that her joints

1    were not swollen or red.  (Tr. 327.)  Plaintiff exhibited full mobility in her joints and she

2    refused to participate in range of motion testing, asserting that she was afraid of pain.

3    (*Id.*)  Plaintiff had various laboratory tests at Summit, including a blood test showing

4    elevated levels of C reactive protein (a protein produced by the liver).  (Tr. 350.)  A July

5    20, 2010 treatment note states that the test results were inconclusive.  (Tr. 335.)

6         During a March 2011 appointment at Summit, Plaintiff reported a headache

7    related to an upper respiratory infection and diarrhea.  (Tr. 324.)  Under a section labelled

8    "Past, Family, and Social History," the treatment provider who completed the treatment

9    note indicated that Plaintiff smoked and wrote "COPD."  (*Id.*)  However, COPD was not

10   included among Plaintiff's diagnoses.  (Tr. 324-25; Tr. 345 (assessing acute bronchitis,

11   not COPD).)

12        In December 2011, Plaintiff presented to Osaf Ahmed, M.D., "[t]o establish care."

13   (Tr. 416.)  Plaintiff reported that, once or twice a week, she experienced diarrhea "all

14   day."  (*Id.*)  She also reported headaches and pain "all over."  (*Id.*)  Plaintiff reported a

15   past diagnosis of COPD, but did not complain of any respiratory issues.  (Tr. 417.)

16   Dr. Ahmed noted that he did not have significant past medical records related to

17   Plaintiff's health.  (Tr. 416-17, 424.)  Because his examination of Plaintiff showed

18   evidence of synovitis (Tr. 417), and blood tests showed a rheumatoid factor of 1450

19   (Tr. 422), Dr. Ahmed referred Plaintiff to the Mayo Clinic for "arthraigia/stiffness" and

20   "elevated RF, R/O RA."  (Tr. 411-12.)

21        **B.    Medical Opinion Evidence**

22              **1.    Robert Barker, M.D.**

23        On September 8, 2010, Plaintiff was examined by State Agency Physician Robert

24   Barker, M.D., for her application for disability benefits.  (Tr. 291.)  Plaintiff complained

25   of back pain from her tailbone to her neck, and some leg pain.  (*Id.*)  She denied fatigue,

26   weakness, headaches, pulmonary difficulty, bowel, or incontinence issues.  (Tr. 292.)

27        On examination, Plaintiff "sat comfortably, stood up symmetrically", and was able

28   to heel-walk, toe-walk, and squat and rise without assistance.  (*Id.*)  Her straight leg

raising was negative and an examination of her back did not show any muscle spasms. (*Id.*)  Plaintiff had full muscle strength, normal reflexes, and intact sensation.  (*Id.*)  She demonstrated full range of motion in all of her joints except her back.  (*Id.*)  Dr. Barker observed Plaintiff bend over ninety degrees without evidence of discomfort when she took her shoes on and off.  (*Id.*)  However, when he asked Plaintiff to "forward flex," she bent only about twenty degrees before complaining of pain.  (*Id.*)  Additionally, her lateral movement was "barely perceptible."  (Tr. 293.)  Dr. Barker found that Waddell's testing was positive in the following five categories: (1) Plaintiff reported superficial and non-anatomic tenderness; (2) Plaintiff reported pain with simulated axial rotation; (3) Plaintiff overreacted to testing; (4) Plaintiff reported regional weakness or sensory changes that deviated from accepted neuroanatomy; and (5) Plaintiff performed normally when distracted.[2]  (*Id.*)  Dr. Barker found that Plaintiff had a normal examination.  (*Id.*)

Dr. Barker completed a "Medical Source Statement of Ability to do Work Related Activities (Physical)," on which he opined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds.  (Tr. 294.)  He found Plaintiff unlimited in her abilities to sit, stand, or walk.  (*Id.*)  He also found that Plaintiff had no postural or environmental limitations.  (Tr. 295.)

### 2.   Dr. Ahmed

In December 2011, Dr. Ahmed completed several forms regarding Plaintiff's functional abilities, including headache and fatigue questionnaires and an assessment of her ability to perform work-related activities.  (Tr. 407-10.)  Dr. Ahmed opined that, in an eight-hour day, Plaintiff could sit for a total of four hours, stand or walk for a total of two hours, frequently lift ten pounds, occasionally lift twenty pounds, and never lift more than twenty pounds.  (Tr. 409.)

He found that Plaintiff had eight to ten headaches per month that affected her concentration, attention, memory, and ability to work.  (Tr. 407.)  He also opined that

---

[2]  "Waddell's signs" refers to clinical findings that indicate the presence of non-anatomic pain.  *Migliore v. Colvin*, 2013 WL 3935879, at *3 n.1 (C.D. Cal. Jul. 29, 2013).

1    Plaintiff's fatigue caused "marked" limitations in her abilities to understand and
2    remember short, simple and detailed instructions.  (Tr. 408.)  He opined that fatigue
3    caused "moderate" limitations in Plaintiff's abilities to carry out short, simple
4    instructions, interact appropriately with the public, co-workers, and supervisors, and to
5    respond to work pressures.  (*Id.*)  He concluded that Plaintiff's fatigue would cause her to
6    be "off task" for five hours during an eight-hour day.  (*Id.*)  To support of these opinions,
7    Dr. Ahmed noted "possible rheumatoid arthritis."  (*Id.*)

8            **C.    Lay Witness Statements**

9            In May 2010, Plaintiff's friend, Thomas Thompson, completed a Function Report
10   about Plaintiff's activities for her application for disability benefits.   (Tr. 166.)
11   Thompson said that he spent two to three hours a day with Plaintiff.  (*Id.*)  He reported
12   that Plaintiff provided food and water for her pets, watched television, read, prepared
13   dinner ("most of the time"), performed light cleaning, did laundry (with her husband),
14   watered the yard, drove, and shopped for groceries.  (Tr. 167-70)  He estimated that she
15   could lift ten pounds and walk a quarter of a mile.  (Tr. 171.)

16           In January 2012, Plaintiff's granddaughter, Tasha Halsey, provided a written
17   statement for Plaintiff's application for disability benefits.  (Tr. 195.)  She reported that
18   Plaintiff used to take her grandchildren on trips to Lake Powell and the Grand Canyon,
19   but that Plaintiff now had trouble walking from her bed to the couch, and was unable to
20   drive or go to the grocery store.  (Tr. 195-96.)

21           In January 2012, Plaintiff's grandson, Bruce Ducheseau, provided a statement for
22   Plaintiff's application for disability benefits. (Tr. 197.)  He stated that Plaintiff used to go
23   on long walks, hunt, ride an ATV, and go on family outings, but she could no longer
24   engage in those activities.  (*Id.*)  He reported that Plaintiff had a hard time walking,
25   opening things, and lifting things.  (*Id.*)  He stated that he helped Plaintiff get out of the
26   car, get off of the couch, and climb stairs.  (*Id.*)  He further stated that Plaintiff could not
27   do anything by herself and did not sleep well.  (*Id.*)

28

### III.    Administrative Hearing Testimony

Plaintiff was in her sixties at the time of the administrative hearing.  (Tr. 41.)  Her past relevant work included customer service and restaurant owner.  (Tr. 42.)  Plaintiff testified that she had not worked since she injured her back at work in May 2009.  (Tr. 41-42.)  Plaintiff reported back, hip, and neck pain, and numbness and tingling in her hands.  (Tr. 45, 49-50.)  She reported a diagnosis of irritable bowel syndrome, and asserted that she experienced symptoms two or three days a week.  (Tr. 50.)  Plaintiff testified that she woke up with a headache every other day.  (Tr. 49.)  Plaintiff said that she was prescribed oxygen for COPD.  (Tr. 50-51.)  She estimated that she could stand or walk for ten minutes at a time and sit for fifteen minutes at a time.  (Tr. 47.)  She reported difficulty lifting a gallon of milk or a frying pan.  (Tr. 47-48.)  Plaintiff also testified that she handled her own personal care without help, cooked, washed dishes, swept, did laundry, drove (for forty-five minutes at a time), and shopped for groceries (with help).  (Tr. 43-44.)

### IV.    The ALJ's Decision

A claimant is considered disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits).  To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

#### A.    Five-Step Evaluation Process

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that she is not presently engaged in a substantial gainful activity, and (2) that her impairment or combination of impairments is severe.    20 C.F.R. § 404.1520(a)(4)(i) and (ii).  If a claimant meets steps one and two, she may be found

disabled in two ways at steps three through five.  At step three, she may prove that her impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is presumptively disabled.  If not, the ALJ determines the claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e). At step four, the ALJ determines whether a claimant's RFC precludes her from performing her past work.  20 C.F.R. §  404.1520(a)(4)(iv).  If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education.  20 C.F.R. § 1520(a)(4)(v).  If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

**B.**      **The ALJ's Application of the Five-Step Evaluation Process**

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff met the insured status requirements for disability insurance benefits on December 31, 2010.  (Tr. 16.)  He also found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, May 14, 2009, through her date last insured, December 31, 2010.  (*Id*.)  At step two, the ALJ found that Plaintiff had the following severe impairment: "post laminectomy at L4-L5 and L5-S1 in 1987." (*Id.*)  At the third step, the ALJ found that the severity of that impairment did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17.)  The ALJ next concluded that Plaintiff retained the RFC to perform "medium work," except that she was limited to sitting, standing, or walking for six hours out of an eight-hour work day.  (Tr. 18.)  At step four, the ALJ found that Plaintiff could perform her past work as a restaurant owner.  (Tr. 20.)   The ALJ alternatively found that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant number in the national economy that Plaintiff could perform.  (*Id.*)  The ALJ concluded that Plaintiff was not disabled

1  within the meaning of the Act "at any time from May 14, 2009, the alleged onset date,
2  through December 31, 2010, the date last insured (20 CFR § 404.1520(f))."  (Tr. 21.)

3  **C.   Evidence submitted to the Appeals Council after the ALJ's decision**

4  After the ALJ's February 2012 decision, Plaintiff requested review by the Appeals
5  Council and submitted records from the Mayo Clinic, all of which were dated more than
6  a year after Plaintiff's December 2010 date last insured.  (Tr. 5, 441-53.)  The Mayo
7  Clinic records show that, in February 2012, Plaintiff presented to rheumatologist
8  Catherine Harmon, M.D., for examination.  (Tr. 441.)  Plaintiff reported that, "for the
9  past year," she had had diarrhea one to two times a week.  (*Id.*) She also reported
10 swelling and reduced strength in her hands, and pain in her hips, ankles, and feet.
11 (Tr. 441-42.)  Dr. Harmon observed that, in December 2011, Plaintiff had an elevated
12 rheumatoid factor ("strongly positive at 1045 with normal being less than 14"), but a
13 normal C-reactive protein test.   (Tr. 443.)   Dr. Harmon noted the presence of
14 fibromyalgia tender points and stated that rheumatoid arthritis should be ruled out, but
15 did not diagnose either impairment.   (Tr. 444.)   Dr. Harmon ordered imaging of
16 Plaintiff's hands that showed minimal to moderate osteoarthritis. (Tr. 448.) Plaintiff also
17 submitted updated imaging of her neck and back.  (Tr. 449, 451.)  Nerve conduction
18 studies of her right leg were normal, with no evidence of radiculopathy.  (Tr. 453.)  The
19 Appeals Council found that this evidence did not provide a basis for changing the ALJ's
20 decision.  (Tr. 2-3.)

21 **V.   Standard of Review**

22 The district court has the "power to enter, upon the pleadings and transcript of
23 record, a judgment affirming, modifying, or reversing the decision of the Commissioner,
24 with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The district
25 court reviews the Commissioner's final decision under the substantial evidence standard
26 and must affirm the Commissioner's decision if it is supported by substantial evidence
27 and it is free from legal error.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198
28 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ

erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).   In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).   "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

**VI.    Plaintiff's Claims**

Plaintiff asserts that the ALJ erred by (1) rejecting a treating provider's opinion, (2) failing to conclude that Plaintiff's rheumatoid arthritis, irritable bowel syndrome, and "need for supplemental oxygen" were severe impairments, (3) failing to account for Plaintiff's pain, fatigue, and "fine or gross motor limitations" in her RFC assessment, (4) discrediting Plaintiff's symptom testimony, and (5) failing to consider lay witness opinions. (Doc. 14 at 2.) In response, the Commissioner asserts that the ALJ's decision is free of harmful error and supported by substantial evidence in the record. (Doc. 16.)

**A.    The ALJ Properly Weighed Dr. Ahmed's Opinion**

In her first and third claims, Plaintiff argues that the ALJ erred by assigning no weight to Dr. Ahmed's opinions regarding Plaintiff's functional abilities and by failing to include in the RFC assessment the functional limitations that Dr. Ahmed identified.

1    (Doc. 14 at 7, 10.)  As discussed below, the Court rejects Plaintiff's arguments and finds

2    that the ALJ did not err.

3        In weighing medical source evidence, the Ninth Circuit distinguishes between

4    three types of physicians: (1) treating physicians, who treat the claimant; (2) examining

5    physicians, who examine but do not treat the claimant; and (3) non-examining physicians,

6    who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

7    1995).  Generally, more weight is given to a treating physician's opinion.  *Id*.  The ALJ

8    must provide clear and convincing reasons supported by substantial evidence for

9    rejecting a treating or an examining physician's uncontradicted opinion.  *Id.*; *Reddick v.

10   Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  An ALJ may reject the controverted opinion

11   of a treating or an examining physician by providing specific and legitimate reasons that

12   are supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211,

13   1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.  The Court considers Plaintiff's claims

14   regarding the weight the ALJ assigned to the medical source opinions in light of these

15   standards.

16       As previously noted, Dr. Ahmed opined that, in an eight-hour day, Plaintiff could

17   sit for a total of four hours, stand or walk for a total of two hours, frequently lift ten

18   pounds, occasionally lift twenty pounds, and never lift more than twenty pounds.

19   (Tr. 409, 427.)  He also found that she could occasionally stoop, squat, climb, or reach,

20   and that she could never crawl.  (Tr. 410, 428.)  He further found that Plaintiff was

21   limited to occasional grasping, pushing or pulling of controls, and fine manipulation.

22   (Tr. 410, 428.)  Dr. Ahmed also opined that Plaintiff's fatigue and headaches caused

23   moderate to marked limitations in her abilities to understand, remember and carry out

24   simple or detailed instructions, interact appropriately with the public and co-workers,

25   respond appropriately to work pressures, and maintain attention.  (Tr. 407-08.)  The ALJ

26   gave Dr. Ahmed's opinions "no weight" because the level of impairment that Dr. Ahmed

27

28

found was not supported by the record.[3]  (Tr. 19.)  The ALJ also noted that Plaintiff had received conservative treatment for her headaches.  (*Id.*)

Plaintiff argues that the ALJ should have assigned controlling weight to Dr. Ahmed's opinions.  (Doc. 14 at 5-8, 10.)  To support her argument, Plaintiff asserts that "Summit Healthcare and Dr. Ahmed was a longitudinal provider worthy of controlling evidentiary weight."  (Doc. 14 at 6.)  However, as the Commissioner notes (Doc. 16 at 11), the record reflects that Dr. Ahmed did not treat Plaintiff until December 2011 and he rendered his opinions regarding her functional limitations that same month. (Tr. 407, 416.)  Thus, Dr. Ahmed's opinions were based on a limited time frame and the record does not support Plaintiff's assertion that Dr. Ahmed had a detailed, longitudinal picture of Plaintiff's impairments.  *Cf.* 20 C.F.R. § 404.1527(c)(2) ("[g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)"); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.2 (9th Cir. 2001) (a treating physician's opinion may be entitled to little if any weight if the treating physician has not seen the claimant long enough to have obtained a longitudinal picture of the claimant's impairments).

Additionally, the ALJ did not err by rejecting Dr. Ahmed's opinions as unsupported by the medical record because "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1138 (9th Cir. 2009).  As set forth below, substantial evidence supports the ALJ's finding that Dr. Ahmed's opinions were not supported by the medical record.  (Tr. 19.)

The record reflects that Plaintiff's symptoms responded to treatment, and that her physical functioning was intact on examination.   (Tr. 248-49, 292, 261, 254, 305.)

---

[3]  The ALJ mistakenly refers to Dr. Ahmed as Dr. Ahmen.  (Tr. 19.)  The medical record confirms that the doctor's last name is Ahmed.  (*See* Tr. 414.)

Dr. Ahmed opined that Plaintiff had functional limitations due to chronic headaches (Tr. 407 ("8-10 headaches [per] month," that last a "few hours"), however, the record does not support his opinion regarding the frequency or duration of Plaintiff's headaches. Aside from a 2008 treatment note stating that Plaintiff had a headache related to "hay fever" (Tr. 332), and a 2011 treatment note stating that Plaintiff had a headache related to a respiratory infection (Tr. 324), treatment records from Summit do not reflect that Plaintiff complained of, or was treated for, headaches.  (Tr. 326-34, 341-43, 377-89, 390-403.)  Similarly, although Dr. Uhall noted that Plaintiff had a sinus headache related to bronchitis on one occasion in 2009 (Tr. 260), her treatment notes do not indicate that Plaintiff had frequent headaches.  (Tr. 260-67.)  Dr. Ahmed also opined that Plaintiff's "mental functioning" was limited due to "possible rheumatoid arthritis."  (Tr. 408, 429.) However, record evidence shows that Plaintiff denied inflammation symptoms, she did not have swelling or redness in her joints, and her joints were fully mobile.  (Tr. 237.)

Therefore, the ALJ did not err by discounting Dr. Ahmed's opinions as unsupported by the medical record.  *See* 20 C.F.R. §§ 404.1527(c)(3), (4) (ALJ must consider support for opinion and consistency with the record as a whole); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discount treating physician opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

Petitioner also argues that the ALJ erred by failing to include the functional limitations that Dr. Ahmed identified in the RFC assessment.  (Doc. 14 at 10.)  Because the ALJ did not err in discounting Dr. Ahmed's opinions regarding Plaintiff's functional limitations, the ALJ did not err by omitting those limitations from the RFC assessment. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (In formulating a claimant's RFC, an ALJ is not required to include limitations that are not supported by substantial evidence).

**B.     Severe Impairments**

**1.     Standard for Step Two Determination**

Plaintiff also argues that the ALJ erred at step two of the five-step evaluation process by failing to include rheumatoid arthritis, irritable bowel syndrome, and need for supplemental oxygen (COPD) in the list of Plaintiff's severe impairments.[4]  (Doc. 14 at 8.)  At step two, the ALJ determines whether the claimant has a "severe" impairment or combination of impairments that significantly limits her ability to do basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

A mental or physical "impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."[5]  20 C.F.R. §§ 404.1508, 416.908.   Thus, a symptom or combination of symptoms cannot establish a medically determinable physical or mental impairment "unless there are medical signs and laboratory findings demonstrating the existence of a

---

[4]   The record reflects that the ALJ did not specifically discuss Plaintiff's rheumatoid arthritis, COPD (or need for oxygen), or irritable bowel syndrome.  (Tr. 16-17.)   However, Plaintiff does not assert that the ALJ's failure to do so was error. (Doc. 14.)  Rather, she argues that the ALJ erred by failing to consider those impairments severe.  (Doc. 14 at 9.)

[5]  Symptoms" are the claimant's description of her physical or mental impairment. 20 C.F.R. § 404.1528(a). A claimant's "statements alone are not enough to establish that there was a physical or mental impairment."  *Id.*  "Signs" are "anatomical, physiological, or psychological abnormalities which can be observed, apart from the claimant's statements (symptoms)."  *Id.* at § 404.1528(b).   "Signs must be shown by medically acceptable clinical diagnostic techniques."  *Id.*  "Laboratory findings" are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  *Id.* at § 404.1528(c).

1  medically determinable physical or mental impairment."  SSR 96-4p, 1996 WL 374187,

2  at *1.  *See also Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (noting that "a

3  medical opinion offered in support of an impairment must include 'symptoms [and a]

4  diagnosis.'") (citing SSR 96-6p, 1996 WL 374180, at *1).

5         **2.**        **The ALJ did not Err at Step Two**

6                 **a.**        **Rheumatoid Arthritis**

7        Plaintiff asserts that she has suffered undiagnosed rheumatoid arthritis since at

8  least July 7, 2010, and that the ALJ erred by not considering it a medically determinable

9  impairment that was severe.  (Doc. 14 at 9.)  To support her argument, Plaintiff states that

10  her C-reactive protein (CRP) was elevated in July 2010 indicating the "presence of an

11  inflammatory process like rheumatoid arthritis" (Doc. 14 at 9 (citing Tr. 334, 350)), and

12  that in December 2011, her rheumatoid arthritis lab factor was 1045 and normal is less

13  than 14.0.  (Doc. 14 at 9 (citing Tr. 422).)  She also states that she had difficulty grasping

14  and gripping.  (Doc. 14 at 9.)

15        A July 20, 2010 treatment note states that Plaintiff's lab results were inconclusive.

16  (Tr. 335.)   The evidence Plaintiff submitted to the Appeals Council after the ALJ's

17  decision showed that although Plaintiff had a positive rheumatoid factor in December

18  2011, her C-reactive protein test was normal.  (Tr. 443.)  Dr. Harmon did not diagnose

19  rheumatoid arthritis at that time, but rather noted that it should be "rule[d] out."

20  (Tr. 444.)   The record does not contain a diagnosis of rheumatoid arthritis by an

21  acceptable medical source, as required to establish a medically determinable impairment.

22  (Tr. 408 ("possible" rheumatoid arthritis), 429 (same), 444 ("rule out" rheumatoid

23  arthritis); *see* 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical

24  sources to establish whether you have a medically determinable impairment(s)."); 

25  *Ukolov*, 420 F.3d at 1006 (a medical opinion must include both symptoms and a

26  diagnosis (citing SSR 96-6p, 1996 WL 374180, at *1)).  Accordingly, the ALJ did not err

27  by failing to consider Plaintiff's undiagnosed rheumatoid arthritis a severe impairment.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.      Irritable Bowel Syndrome and COPD

To obtain disability benefits, "a claimant must demonstrate a disability that existed prior to the claimant's last insured date." *Anderson v. Apfel*, 2000 WL 913666, at *4 (D. Or. Mar. 25, 2000).   The claimant must prove that she was "either permanently disabled or subject to a condition which became so severe as to disable [the claimant] prior to the date upon which [the claimant's] disability insured status expire[d]." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

Plaintiff argues that the ALJ should have included COPD and irritable bowel syndrome (IBS) among her severe impairments.   (Doc. 14 at 8-10.)   Plaintiff alleges disability beginning on May 14, 2009.  (Tr. 14, 128.)  Plaintiff did not include COPD or IBS among the "illnesses, injuries, or conditions," that limited her ability to work on the Disability Reports that she completed in 2010.  (Tr. 150 (identifying disabling conditions as "2 missing cartlidge (sic) between 14 & 15 and neck problems, numbing down arm and leg, [h]ypertension, cardiac disease, seizures, depression, anxiety"); Tr. 145 (noting no changes in disabling conditions).)

Additionally, the record in this case does not document treatment for COPD or IBS on or before Plaintiff's December 2010 date last insured.  (Tr. 19 (discussing medical record).)   Plaintiff bases her argument on evidence from after the relevant period.  (Doc. 14 at 9-10 (citing Tr. 321, 324, 325, 362-63, 416, 441)), and does not argue that IBS or COPD existed before the expiration of her insured status.  *See Flaten v. Sec'y of Health & Human Servs*, 44 F.3d 1453, 1461 (9th Cir. 1995) (noting that "in a retrospective diagnosis case, a '[c]laimant is not entitled to disability benefits unless he can demonstrate that his disability existed prior to the expiration of his insured status.'"); *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991) (finding that the claimant must demonstrate disability prior to his last insured date); *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (finding that "only disabilities existing before that time [expiration of insured status] can trigger insurance benefits").   The evidence upon which Plaintiff relies shows that she was prescribed oxygen in relation to bronchitis after her date last

insured.  (Tr. 325, 345.)  It also reflects that Plaintiff did not report bowel problems to medical providers until after her date last insured.  (Tr. 324, 441.)

Accordingly, Plaintiff has not met her burden of showing that IBS and COPD (or the use of oxygen) were present on or before her December 2010 date last insured.  *See Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996) (stating that the burden of proof to establish a disability rests upon the claimant).  Accordingly, the ALJ did not err in failing to consider COPD or IBS severe impairments.

### C.    The ALJ did not Err in Discounting Plaintiff's Subjective Complaints

#### 1.    The Two-Step Credibility Analysis

Plaintiff asserts that the ALJ erred in finding her symptom testimony less than credible.  (Doc. 14 at 11.)  An ALJ engages in a two-step analysis to determine whether a claimant's subjective symptom testimony is credible.  *Garrison v. Colvin*, 2014 WL 3397218, at *16 n.18 (D. Ariz. Jul. 14, 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom.  *Smolen*, 80 F.3d at 1282.  Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce his pain."  *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d at 1160–61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce his pain or other symptoms, the

ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ may consider the objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication taken, and treatments for relief of pain or other symptoms. *See* 20 C.F.R. § 404.1529(c); *Bunnell*, 947 F.2d at 346.

At this second evaluative step, the ALJ may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "'The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 2014 WL 3397218, at *15-18 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

### 2.    The ALJ's Assessment of Plaintiff's Symptom Testimony

The ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms" were not entirely credible. (Tr. 18.) After discussing the medical record, the ALJ concluded that the degree of limitation Plaintiff alleged "was not supported by the objective medical evidence of record." (Tr. 20.)

As Plaintiff correctly argues (Doc. 14 at 11), the absence of fully corroborative medical evidence cannot constitute the sole basis for an ALJ's adverse credibility determination. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (it is legal error for "an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"), *superseded by statute on other grounds as stated in Bunnell v. Sullivan*, 912 F.2d 1149 (9th Cir. 1990); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the "lack of medical evidence" can be "a factor" in rejecting credibility, but cannot "form the sole basis").

Here, however, the ALJ also gave several other clear and convincing reasons to support her credibility determination.  She found that Plaintiff's pain was successfully treated with medication (Tr.19 (citing Admin. Hrg. Ex. 5F at 3)), Plaintiff refused to participate in range of motion testing (Tr. 19 (citing Hrg. Ex. 15F at 7)), and Plaintiff had a positive Waddell's test for superficial tenderness, non-anatomic tenderness, and axial loading, stimulator rotation, overreaction, regional disturbance, and distraction.  (Tr. 19 (citing Admin. Hrg. Ex. 10F).)

These are legally sufficient reasons to support the ALJ's adverse credibility determination that are supported by substantial evidence in the record.[6]  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *Warre v. Comm'r, of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that "[i]mpairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."); *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001) (stating that a claimant's lack of cooperation during consultative examinations supported an adverse credibility finding); *Osenbrock v. Apfel,* 240 F.3d 1157, 1166 (9th Cir. 2001) (finding that positive Waddell's signs on examination supported the ALJ's finding that the claimant was not credible).  Accordingly, the ALJ did not err by finding Plaintiff's symptom testimony not fully credible.

### D.    Lay Opinion Testimony

Finally, Plaintiff argues that the ALJ erred by not discussing the lay opinions of her grandchildren.  (Doc. 14 at 12.)  Plaintiff's granddaughter wrote a letter "to whom it may concern" stating that Plaintiff used to be very physically active, but cannot grocery shop, "run around town" or drive to Showlow alone because she gets tired and experiences pain after "a few hours."  (Tr. 195.)  She also stated that Plaintiff had pain

---

[6]  The ALJ's discussion of Plaintiff's credibility spanned several pages of her decision.  (Tr. 20.)  Although the ALJ generally concluded that the record did not support Plaintiff's subjective complaints, before reaching that conclusion, she identified specific grounds for discrediting Plaintiff's credibility.  (Tr. 19.)  Her failure to reiterate those grounds in her final conclusion does not constitute harmful error.

daily.  (*Id.*)  In a similar letter, Plaintiff's grandson stated that she had pain on a daily basis and had difficulty picking things up, opening things, walking, and sleeping. (Tr. 197.)

The ALJ did not address these opinions in her decision.  However, she discussed a similar lay witness statement from Plaintiff's friend, Thomas Thompson.  (Tr. 19-20.) On a Function Report, Thompson stated that Plaintiff provided food and water for her pets, watched television, read, and prepared dinner ("most of the time").  (Tr. 167-68.) He also stated that she performed light cleaning, did laundry (with her husband), watered the yard, drove, and shopped for groceries.  (*Id.* at 168-69.)  He estimated that she could lift ten pounds and walk one-fourth of a mile.  (Tr. 171.)

The ALJ discounted Thompson's opinion because it was inconsistent with the opinions and observations of the medical doctors in the record.  (Tr. 20.)  Although the Ninth Circuit has held that a mere lack of supporting evidence is not a germane reason for discounting a lay witness's testimony, *see Smolen*, 80 F.3d at 1289, it has also repeatedly held that inconsistency or contradiction with the medical evidence is a germane reason. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("The ALJ properly discounted lay testimony that conflicted with the available medical evidence."); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("inconsistency with medical evidence" is a germane reason); *Barton v. Astrue*, 500 Fed. App'x 607, 609 (9th Cir. 2012) ("The ALJ's finding that the lay opinion testimony conflicted with the medical evidence was a 'germane reason' for rejecting this testimony." (alteration omitted)); *Rivera v. Colvin*, 2013 WL 6002445, at *2-*4 (D. Or. Nov. 12, 2013) (discussing the *Smolen* and *Vincent* lines of cases).  Accordingly, the ALJ provided a legally sufficient reason for discounting Thompson's lay opinion.

Even if the ALJ erred by failing to specifically discuss the lay witness statements from Plaintiff's grandchildren, any error is harmless because the ALJ gave legally sufficient reasons for rejecting Thompson's and Plaintiff's similar statements regarding Plaintiff's symptoms and functional limitations and these reasons apply equally to the

statements from Plaintiff's grandchildren.  *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (stating that the ALJ's failure to explicitly discuss reasons for discounting lay witness testimony was harmless when the ALJ gave valid reasons for discounting similar testimony by the claimant).

**VII.   Conclusion**

As set forth above, the ALJ's opinion is supported by substantial evidence in the record and is free of harmful legal error.

Accordingly,

**IT IS ORDERED** that the Commissioner's disability determination in this case is **AFFIRMED**.   The Clerk of Court is directed to enter judgment in favor of the Commissioner and against Plaintiff and to terminate this action.

Dated this 26th day of September, 2014.

Bridget S. Bade
United States Magistrate Judge